MARKS & KLEIN
Andrew P. Bleiman, Esq.
1363 Shermer Road, Suite 318
Northbrook, Illinois 60062
Telephone:  (312) 206-5162
E-mail:  andrew@marksklein.com
(*pro hac vice* application to be submitted)

LEE HIGH, LTD.
Cecilia Lee, Esq.
Nevada Bar No. 3344
Elizabeth High, Esq.
Nevada Bar No. 10082
448 Ridge Street
Reno, Nevada 89501
Telephone:  775.499.5712
Email: c.lee@lee-high.com
Email: e.high@lee-high.com

Attorneys for Plaintiff HP Tuners, LLC

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| HP TUNERS, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>BOBBIE CANNATA,<br><br>Defendant. | Case No. **3:19-ms-00003**<br><br>**DECLARATION OF ANDREW P. BLEIMAN IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE WHY BOBBIE CANNATA SHOULD NOT BE FOUND IN CONTEMPT OF COURT FOR FAILURE TO COMPLY WITH SUBPOENA TO TESTIFY AT DEPOSITION AND BE COMPELLED TO COMPLY WITH SUBPOENA** |

I, Andrew P. Bleiman, Esq., of full age and competency, do hereby declare and say as follows:

1.    I am an attorney of the State of Illinois and the Managing Attorney of the law firm Marks & Klein, LLP's Illinois office.  In that capacity, I have been entrusted with the above-captioned file.  I am fully familiar with the facts and circumstances alleged herein.

2.     This Declaration is submitted in support of HP Tuners LLC's <u>Motion for Order to Show Cause Why Bobbie Cannata Should Not be Found in Contempt for Failure to Comply with Subpoena to Testify at Deposition and Be Compelled to Comply with Subpoena</u> ("Motion"). All capitalized terms herein shall have the same meaning ascribed to them in the Motion.

3.     Plaintiff has learned that Plaintiff's former business partner, Ken Cannata, unlawfully provided HP Tuners' intellectual property to Kevin Sykes-Bonnett ("<u>Sykes-Bonnet</u>") and Syked ECU Tuning, Inc. ("<u>Syked ECU Tuning</u>") (together, "<u>Defendants</u>").

4.     It has also recently come to Plaintiff's attention that Ken Cannata's wife, Bobbie Cannata, is one of three shareholders in Syked ECU Tuning.

5.     On May 8, 2018, HP Tuners filed an Amended Complaint against Sykes-Bonnett and Syked ECU Tuning in the United States District Court for the Western District of Washington in the matter of *HP Tuners, LLC v. Kevin Sykes-Bonnett, et. al.*, Civil Action No. 3:17-cv-05760 BHS, alleging that defendants individually and in concert with other individuals misappropriated Plaintiff's trade secrets and proprietary information, and knowingly generated, created, used, obtained, and distributed fraudulent application keys. A true and correct copy of the Amended Complaint (without accompanying exhibits) is attached hereto as Exhibit A.

6.     On September 11, 2018, Plaintiff properly issued Bobbie Cannata a subpoena to testify at deposition and provide documents pursuant to Fed. R. Civ. P. 45, and which set the deposition date for October 16, 2018 (the "Subpoena"). Attached hereto as Exhibit B is a true and correct copy of the Subpoena.

7.     On October 4, 2018, less than two (2) weeks before the scheduled deposition, Ken Cannata, filed a Motion to Quash the Subpoena (the "Motion to Quash") based upon relevance and marital privilege. The Motion to Quash was denied pursuant to court order dated November 28, 2018. A true and correct copy of the November 28, 2018 Order denying the Motion to Quash is attached hereto as Exhibit C.

8.     On September 10, 2019, the process server executed a sworn Declaration of Attempts specifying the numerous attempts she undertook to affect service of the Subpoena on

1   Bobbie Cannata, and the evidence the process server observed indicating that Bobbie Cannata was

2   deliberately evading service.  A true and correct copy of the Declaration of Attempts is attached

3   hereto as Exhibit D.

4        9.     Despite the court's clear and unambiguous refusal to quash the Subpoena, Bobbie

5   Cannata has failed to appear for deposition or produce any documents, as required.

6        I declare that all of the foregoing is true and accurate to the best of my knowledge, and if

7   any of the foregoing is willfully false, I am subject to punishment.

8        DATED this 31st day of January, 2019.

9                  /s/ Andrew P. Bleiman

10                 ANDREW P. BLEIMAN

LEE HIGH, LTD.
48 Ridge Street
Reno, NV 89501
(775) 324-1011

3

1

INDEX OF EXHIBITS

2

| Exhibit | Description | Number of Pages |
|---------|-------------|-----------------|
| A | Amended Complaint (without accompanying exhibits) filed in *HP Tuners, LLC v. Kevin Sykes-Bonnett, et. al.*, Civil Action No. 3:17-cv-05760 BHS | 30 pages |
| B | Subpoena to Testify at Deposition and Provide Documents Pursuant to Fed. R. Civ. P. 45 issued to Bobbie Cannata | 4 pages |
| C | November 28, 2018 Order Denying Ken Cannata's Motion to Quash | 6 pages |
| D | Declaration of Attempts | 3 pages |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

LEE HIGH, LTD.
48 Ridge Street
Reno, NV 89501
(775) 324-1011

# EXHIBIT A

**Amended Complaint (without accompanying exhibits) filed in**
*HP Tuners, LLC v. Kevin Sykes-Bonnett, et. al.,*
**Civil Action No. 3:17-cv-05760 BHS**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| HP TUNERS, LLC, a Nevada limited liability company,<br><br>　　　　　　　　Plaintiff,<br><br>　vs.<br><br>KEVIN SYKES-BONNETT, SYKED ECU TUNING INCORPORATED, a Washington corporation, and JOHN MARTINSON,<br><br>　　　　　　　　Defendants. | CASE NO.  3:17-cv-05760-BHS<br><br>**FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs HP TUNERS, LLC, a Nevada limited liability company ("HPT"), by its attorneys, for its Complaint for Injunctive Relief ("Complaint") against Defendants KEVIN SYKES-BONNETT ("Sykes-Bonnett"), JOHN MARTINSON ("Martinson") and SYKED ECU TUNING INCORPORATED ("Syked") (collectively, Sykes-Bonnett, Martinson and Syked are referred to herein as "Defendants").  In support thereof, HPT states as follows:

## <u>NATURE OF THE ACTION</u>

1.　　　At substantial expense, hard work and ingenuity over the course of many years and thousands of man hours, HPT has developed complete, cost effective tuning and data acquisition solutions for automobile enthusiasts and professional shops.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND DAMAGES - page 1

Heurlin, Potter, Jahn, Leatham, Holtmann & Stoker, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

2.      Over the years, HPT has carefully guarded its proprietary products and source code in order to protect its trade secrets, specifications and software.

3.      Sykes-Bonnett and Martinson, acting individually and on behalf of Syked ECU Tuning Incorporated, wrongfully obtained and possesses HPT's confidential and proprietary source code, and has misappropriated HPT's trade secrets and proprietary information.

4.      This is an action against Defendants for: (i) violation of the Computer Fraud and Abuse Act ("CFAA") arising under 18 U.S.C. §1030; (ii) violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §1836 et seq.; (iii) misappropriation of trade secrets arising under the Washington Uniform Trade Secrets Act, RCW 19.108; (iv) violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1 et. seq.; (v) unfair competition under the Washington Consumer Protection Act, RCW 19.86.020; (vi) unfair competition under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et. seq.; (vii) breach of contract; and (viii) tortious interference with prospective economic relations.

## PARTIES

5.      HPT is a Nevada limited liability company with its principal place of business in Buffalo Grove, Illinois.  None of HPT's members reside in this judicial district.

6.      Kevin Sykes-Bonnett is a resident of Washington and is the President of Syked ECU Tuning Incorporated.

7.      John Martinson is a resident of Washington and an officer of Syked ECU Tuning Incorporated.

8.      Syked ECU Tuning Incorporated is a corporation existing under the laws of Washington with its principal places of business in Puyallup, Washington.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND DAMAGES - page 2

Heurlin, Potter, Jahn, Leatham, Holtmann & Stoker, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction for the CFAA and DTSA claims pursuant to 28 U.S.C. §1331.  This Court has supplemental jurisdiction for the state law claims pursuant to 28 U.S.C. §1367.

10.     This Court has jurisdiction over the parties and subject matter in this civil action pursuant to 28 U.S.C. § 1332(a) in that the parties are citizens of different states and that the matter in controversy exceeds the sum of $75,000, exclusive of interests and costs.

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) in that Defendants are residents of the State in which the district is located and a substantial part of the events or omissions giving rise to the claims asserted in this Complaint occurred in this judicial district.

## BACKGROUND FACTS

12.     HPT is a niche business, which provides complete, cost effective automotive tuning and data acquisition solutions for enthusiasts and professional shops.

13.     HPT's business includes but is not limited to computer hardware and software designed for use in custom and/or pre-programmed engine and transmission tuning and calibration applications for automobiles, trucks and other types of vehicles (including but not limited to ATV's, snowmobiles and watercraft) (the "HP Tuners Business").

14.     HPT has expended significant time, money and resources to develop the HP Tuners Business, and HPT has created methods of business, strategies, programs and technologies which did not exist in the industry prior to HPT's development of the HP Tuners Business.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND DAMAGES - page 3

Heurlin, Potter, Jahn, Leatham, Holtmann & Stoker, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

15.     HPT conducts business nationwide. Over the years, HPT has invested a great deal of time and money in developing its proprietary products and source code, and in building and growing the HP Tuners Business.

16.     In order for HPT to gain a competitive advantage in the industry, it has cultivated, nurtured and maintained an extensive network of vendors, resellers and customers to which HPT provides its products and offerings.   HPT's network of vendors, resellers and customers is expansive and relies on HPT to ensure that only authorized, authentic products and offerings are available in the marketplace.

17.     HPT invests a substantial amount of money and other resources in developing and maintaining its network of vendors, reseller and customers.

18.     HPT prides itself in catering to the needs of its vendors, resellers and customers and providing authorized, authentic and functional products and offerings, and the most competitive pricing in the industry.

19.     HPT works diligently to create new products and offerings and to quickly and adeptly match its vendors, resellers and customers' needs and requests.

20.     HPT is constantly working to develop its products, source code and offerings, and has devoted substantial time, money and resources to protect its confidential and proprietary information, and to avoid efforts by third parties to pirate HPT's products and offerings.

21.     As a result of HPT's reputation, exceptional service, and diligent development of products and offerings, HPT has developed long-standing relationships with many of its vendors, resellers and customers.

22.     HPT's confidential and proprietary software, source code, license key generator and offerings have been developed and extensively refined by HPT at a

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND DAMAGES - page 4

Heurlin, Potter, Jahn, Leatham, Holtmann & Stoker, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

substantial cost and effort and constitute confidential information and valuable trade secrets of HPT (collectively, the "Confidential Information").

23.    HPT derives economic value from the fact that its Confidential Information is not known outside of HPT's business and is not available through any public records and information sources. HPT's Confidential Information cannot be independently developed by its competitors without great effort and expense.

24.    Recognizing the economic value that it derives from its Confidential Information, as well as the potential value of this information to its competitors, HPT requires that its Confidential Information be kept strictly confidential by its employees and restricts access to this information.  HPT has taken substantial steps and security measures to protect the confidentiality of its Confidential Information, including but not limited to the following:

      a)    HPT protects access to its Confidential Information through computer passwords;

      b)    HPT protects to its Confidential Information through hard drive encryption on all employee's computers;

      c)    HPT protects access to its Confidential Information through sophisticated firewalls;

      d)    HPT protects distribution of Confidential Information through non-compete and non-disclosure agreements;

      e)    HPT limits the number of employees having access to its Confidential Information.

      f)    Employees    are    given    access    to    HPT's    Confidential

Heurlin, Potter, Jahn, Leatham, Holtmann & Stoker, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

Information on a "need to know" basis;

g)     HPT does not give access to its Confidential Information to non-employees;

h)     HPT employees are forbidden from copying, transferring or otherwise duplicating any of HPT's Confidential Information; and

i)     HPT requires each employee to return to HPT all Confidential Information when the employee leaves HPT's employ.

25.     Furthermore, HPT undertook reasonable measures to maintain the secrecy of its proprietary products, source code, software and offerings, including but not limited to entering into licensing agreements with protective clauses and installing security measures to prevent others from obtaining access and pirating HPT's confidential and proprietary products, source code, software and offerings.

26.     On or about September 28, 2015, Sykes-Bonnett was issued an HPT Interface with eight (8) credits.

27.     In connection with the HPT Interface issued to Sykes-Bonnett and Defendants' use of HPT's software, Defendants entered into an End User License Agreement ("EULA") with HPT on or about September 28, 2015.  (A copy of the EULA is attached hereto as Exhibit A).

28.     The EULA provided, in pertinent part:

You may not create a derivative work, reverse engineer, decompile, or disassemble the SOFTWARE PRODUCT, except and only to the extent that such activity is expressly permitted by applicable law notwithstanding this limitation

(See Exhibit A).

Heurlin, Potter, Jahn, Leatham, Holtmann & Stoker, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

29.     On or about October 11, 2016, in violation of the EULA, Sykes-Bonnett provides a screenshot to Eric Brooks, an HPT employee, showing a feature obtained by Sykes-Bonnett through reverse engineering and hacking the software.  (A copy of the screenshot is attached hereto as Exhibit B).

30.     In same screenshot, Sykes-Bonnett hints at having reverse engineered the HPT software and intent to create licensing defeat software.  (*See* Exhibit B)

31.     Thereafter, on or November 3, 2016, Sykes-Bonnett threatens to make HPT software with licensing defeated to the public, and admits to hacking Diablo (an HPT competitor) handheld devices. (A copy of the screenshot is attached hereto as Exhibit C).

32.     On the same day, Sykes-Bonnett admits to copying SCT's intellectual property and using it in its own software (an HPT competitor) intellectual property and using in own software.  (A copy of the screenshot is attached hereto as Exhibit D).  Sykes-Bonnett further threatens to copy HPT's intellectual property.  (See Exhibit D).

33.     On November 3, 2016, Sykes-Bonnett further admits to "breaking a few things to get what Keith [Prociuk, who is a current owner] and Ken [Cannata, who is a former owner] promised," which is a reference to defeating HPT's software licensing for his own benefit.  (A copy of the screenshot is attached hereto as Exhibit E).

34.     In a message also dated November 3, 2016 to Eric Brooks, Sykes-Bonnett admits to having "wasted alot [sic] of time reversing [HPT] shit."  (A copy of the message is attached hereto as Exhibit F).

35.     On November 15, 2016, Sykes-Bonnett posts on the popular social media website Facebook that he is allegedly owed 42 credits by HPT.  (A copy of the Facebook post is attached hereto as Exhibit G).

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND DAMAGES - page 7

Heurlin, Potter, Jahn, Leatham, Holtmann & Stoker, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

36.     These credits are subsequently issued on same day by HPT and Sykes-Bonnett states in a message to Eric Brooks that all "debts" have been settled.  (A copy of the messages between Sykes-Bonnett and Eric Brooks are attached hereto as Exhibit H).

37.     On December 1, 2016, Sykes-Bonnett admits to Eric Brooks in a message that he sent a Facebook friend request to Matt Honeycutt.  (A copy of the message to Eric Brooks is attached as Exhibit I).

38.     On January 16, 2017, Sykes-Bonnett sent a message to Eric Brooks referencing posts made by Matthew Honeycutt on Facebook, which confirms the Facebook "friendship" status between Sykes-Bonnett and Matthew Honeycutt. (A copy of the messages between Sykes-Bonnett and Eric Brooks dated January 16, 2017 are attached hereto as Exhibit J).

39.     On February 9, 2017, an email from the sender isisdistribution@hotmail.com advertises the availability a hacked HPT cable with multiple tuning credits.  (A copy of the email received sent by isisdistribution@hotmail.com is attached hereto as Exhibit K).

40.     On March 16, 2017, Sykes-Bonnett posts a message concerning the availability of a stolen/hacked HPT interface for sale on a Facebook automotive group.   (A copy of the Facebook post is attached hereto as Exhibit L).

41.     The pictures depicting the vehicles and credits available in the email from isisdistribution@hotmail.com and the Facebook post by Sykes-Bonnett are markedly similar and suggest that Sykes-Bonnett and/or others acting in concert with him are behind isisdistribution@hotmail.com email address. (See Exhibit K and Exhibit L).

42.     On March 28, 2017, in a message to Eric Brooks, Sykes-Bonnett defends his sale of a stolen/cloned HPT interface and contends that HPT "stole a lot of shit in the beginning of

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND DAMAGES - page 8

Heurlin, Potter, Jahn, Leatham, Holtmann & Stoker, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

HPT and closed the forum and went corp." (A copy of the March 28, 2017 message is attached as Exhibit M).

43. On April 7, 2017, Sykes-Bonnett posts a screenshot on Facebook of his alleged software showing a listing of copied HPT parameters. (A copy of the Facebook post is attached hereto as Exhibit N).

44. On April 8, 2017 at 7:26 a.m., one of Sykes-Bonnett's Facebook "friends", Morgan Rickard comments "you really don't like HP Tuners lmao." (See Exhibit N).

45. On April 8, 2017 at 5:06 p.m., Sykes-Bonnett responds as follows: "#fuckhpt Keith, and ken are 2 of the 3 owners and are both bitches. Want to buy shit and pay nothing for it. Fuck them all. I hope they go broke." (See Exhibit N).

46. On June 24, 2017, the username "ecumaster" on mhhauto.com posts for the first time with intent to help with generating licenses for HPT software publicly stating "I can help you with credits for cheap." (See Exhibit O attached hereto).

47. Upon information and belief, "ecumaster" is Sykes-Bonnett acting in concert with Matthew Honeycutt and others.

48. On June 28, 2017, on the HPT forum, "ecumaster" advertises "Hacked Credits" for HPT's VCM Suite software. (See Exhibit P attached hereto). The post states: "No Dramas or Hassles cheap credits. Only $25aud each, 8 for $100aud or 20 for $200aud. discounthptunercredits@mail.com Cheers". (See Exhibit P).

49. On July 6, 2017, on the HPT forum, the username "crackedyou" advertises "cracked" software and licenses. (See Exhibit Q attached hereto). The post states as follows:

Cracked 2.24

Heurlin, Potter, Jahn, Leatham, Holtmann & Stoker, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA 98666-0611
(360) 750-7547

So we have successfully cracked and patched HPTuner VCM software to never ask for licenses. You can read, write and edit/save most all 1998-2014 GM cars and some early Ford to about 2010 and Dodge stuff they supported. Email discounthptunercredits@mail.com if you are interested in this version. The 3.4 and 3.5 has [sic] been patched already and is [sic] in testing and then we will crack 3.6 and remove the call back to the server.

You can read, save, edit and flash any supported files without EVER being asked to license. You can use your existing cable or a brand new one and new [sic] use another credit again.

Cheers

50.     Upon information and belief, "crackedyou" is an alias for "ecumaster", and is also Sykes-Bonnett acting in concert with Matthew Honeycutt and others.

51.     The significance of the "cracked" software advertised by crackedyou and ecumaster is that it allows users to bypass all licensing checks and prompts, thus enabling HPT's users to use the software on any vehicle they wish without paying any licensing fees to HPT.

52.     HPT did not authorize crackedyou, ecumaster or any others to modify HPT's software to bypass all licensing checks and prompts to obtain "free" tuning credits from HPT.

53.     On July 6, 2017, HPT contacts discounthptunercredits@mail.com via alias Peter Brodski and purchases four (4) discounted Dodge credits. (See Exhibit R attached hereto).

54.     HPT receives the credits and verifies that it correctly generates the license keys.

55.     On July 14, 2017, discounthptunercredits@mail.com emails select HPT employees (including an employee whose association with HPT is not publicly known to anyone

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND DAMAGES - page 10

Heurlin, Potter, Jahn, Leatham, Holtmann & Stoker, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA 98666-0611
(360) 750-7547

besides this employee's family, current HPT employees and former HPT employees) containing a link to a "cracked" version of HPT's VCM Suite Software version 3.4. (See Exhibit S attached hereto). The email contains a link to HPT's "cracked" proprietary source code and decryption key (which have been redacted on Exhibit S). The email contends that discounthptunercredits@mail.com has "patched" versions 3.5 and 3.6 of HPT's VCM Suite Software as well. (See Exhibit S).

56.    On August 21, 2017, discounthptunercredits@mail.com emails select HPT employees demanding a public apology from HPT. (See Exhibit T).

57.    Specifically, on August 21, 2017 at 1:05 p.m., various HPT personnel received an email from discounthptunercredits@mail.com demanding a public apology from HPT and which threatened the public release of a cracked version of HPT's VCM Suite Software 3.6, its newest release. (See Exhibit T). The email containing the extortion threat stated:

> Still waiting for the apology for fucking everyone when you shut down the
>
> open source. Here is a fully cracked 3.6 with no licensing required EVER.
>
> Don't make me release this. You have until the end of the week.

58.    The email contains a link to HPT's "cracked" proprietary source code and decryption key (which have been redacted on Exhibit T). As stated above, discounthptunercredits@mail.com was previously selling discounted credits to third parties, which credits have been unlawfully generated using HPT's software.

59.    The August 21, 2017 email from discounthptunercredits@mail.com makes reference to when HPT allegedly "shut down the open source" which Sykes-Bonnett also complained about to Eric Brooks in his message of March 28, 2017. (See Exhibit T and Exhibit M).

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND DAMAGES - page 11

Heurlin, Potter, Jahn, Leatham, Holtmann & Stoker, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

60. On August 23, 2017, Keith Prociuk, one of HPT's owners, posts a message to discounthptunercredits@mail.com containing an explanation in response to the threat received on August 21, 2017. (See Exhibit U attached hereto).

61. On August 25, 2017, in connection with arbitration proceedings against a former HPT employee, HPT obtains a temporary restraining order in that matter arising out of the extortion email sent by discounthptunercredits@mail.com.

62. On August 25, 2017, discounthptunercredits@mail.com sends an email to HPT claiming that they will no longer release software. (See Exhibit V attached hereto).

63. Likewise, on August 25, 2017, ecumaster disables all previously posted mega.nz links to hacked HP Tuners software.

64. Upon information and belief, Sykes-Bonnett has worked with others, including but not limited to Defendants, Christopher Breton-Jean and Matthew Honeycutt to reverse engineer and remove licensing from HPT's VCM Suite Software and to distribute it for their own profit as well as to attempt to cause harm to HPT as a company, which they view as competitors.

65. In fact, documentation received from PayPal in connection with the discounthptunercredits@mail.com email (which was collecting money for the discounted credits that were being offered for sale) demonstrates that funds were *paid* by discounthptunercredits@mail.com to Christopher Breton-Jean, a known colleague, friend and associate of Sykes-Bonnett.

66. Upon information and belief, Defendants, Christopher Breton-Jean and others (including but not limited to Lani Carney who resides in Australia but is likely a stolen identity) conspired to create the discounthptunercredits@mail.com email.

Heurlin, Potter, Jahn, Leatham, Holtmann & Stoker, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

67.     A fundamental component of HPT's business is the sale and distribution of credits via application keys, which are the license mechanism used by customers to tune vehicles.

68.     Only HPT is authorized to generate authentic application keys for use with HPT's products and HPT credits are generally sold for approximately $50.00 USD.

69.     However, Defendants have misappropriated HPT's trade secrets and proprietary information and have knowingly generated, created, used and/or obtained fraudulent application keys that were not generated by HPT.

70.     Upon information and belief, they used the email to unlawfully market and sell thousands of discounted HPT credits.

71.     Upon information and belief, in connection with this scheme, Defendants, themselves and through others, sold such fraudulent application keys.

72.     Upon information and believe, in connection with this scheme, Lani Carney created a PayPal account, collected the funds received from sales of discounted HPT credits, and then in turn paid funds to Christopher Breton-Jean and Sykes-Bonnett after receiving them.

73.     Defendants, acting in concert with others, have wrongfully acquired and possess an HPT license generator tool, which they have used to generate and sell licenses publicly that have been passed off as genuine and authentic products and offerings of HPT.

74.     Defendants, acting in concert with others, have wrongfully accessed, trespassed, engineered and/or hacked HPT's software, systems and source code to remove licensing restrictions from HPT's VCM Suite Software to distribute it for their own profit as well as to cause harm to HPT, which Defendants view as a competitor.

75.     Defendants, acting in concert with others, accomplished this via various means including adding extra licenses to existing interfaces and reselling them, by logging in via remote

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND DAMAGES - page 13

Heurlin, Potter, Jahn, Leatham, Holtmann & Stoker, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

desktop to customer machines to enter in a hacked license key and by selling a version of hacked software with licensing defeated.

76.     Defendants, acting in concert with others, have attempted to mask their identities by using fake Australian persona and using spoofed Australian internet protocols.

77.     Defendants, acting in concert with others, have publicly posted confidential and proprietary information of HPT including screenshots of HPT's parameter lists which were stolen and which Defendants incorporated into their own software.

78.     Defendants, acting in concert with others, have also attempted to sell a cloned HPT interface with hacked credits on Facebook for their own profit as well as to cause harm to HPT, which Defendants view as a competitor.

79.     Defendants' generation and/or use of fraudulent application keys to obtain credits without purchasing them from HPT constitutes a violation of the terms and provisions of the EULA, otherwise infringes upon HPT intellectual property rights and constitutes a misappropriation of HPT's confidential and proprietary information.

80.     Defendants have knowingly and wrongfully acquired, possess and are using fraudulent application keys to generate licenses, tune vehicles and generate revenues for their own benefit or the benefit of others.

81.     Defendants' misconduct includes adding extra licenses to existing interfaces using fraudulent application keys, which were not generated by HPT.

## COUNT I

## VIOLATION OF COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. §1030

82.     HPT repeats and realleges ¶¶ 1 through 81 of the Complaint as if fully set forth herein.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND DAMAGES - page 14

Heurlin, Potter, Jahn, Leatham, Holtmann & Stoker, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

83.     Defendants, knowingly and with intent to defraud, wrongfully accessed, trespassed, engineered and/or hacked HPT's software, systems and source code to remove licensing restrictions from HPT's VCM Suite Software to distribute it for their own profit as well as to cause harm to HPT, which Defendants view as a competitor.

84.     Moreover, Defendants, acting in concert with others, accomplished this via various means including adding extra licenses to existing interfaces and reselling them, by logging in via remote desktop to customer machines to enter in a hacked license key and by selling a version of hacked software with licensing defeated.

85.     HPT's business, computers, software, systems and source code are used in, and affect, interstate commerce.

86.     Moreover, in doing so, Defendants intended to and succeeded in obtaining something of value in excess of $5,000 per year (as required by the CFAA).

87.     Through its fraudulent activity, Defendants have generated profits and obtained revenues that otherwise would have gone to HPT.

88.     Defendants' activities described hereinabove constitute a violation of the CFAA, 18 U.S.C. §1030(a)(4).

89.     Plaintiff, HPT, may maintain a civil action against Defendants for violations of the CFAA pursuant to 18 U.S.C. §1030(g).

90.     HPT is entitled to compensatory damages, injunctive relief and other equitable relief.

91.     On or about March 27, 2017, and subsequently thereto, HPT demanded that Defendants cease and desist from their offending conduct.

92.     However, Defendants have failed to comply.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND DAMAGES - page 15

Heurlin, Potter, Jahn, Leatham, Holtmann & Stoker, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

93.     As a direct and proximate result of Defendants' ongoing violations and the misconduct alleged herein, HPT has suffered, and will continue to suffer substantial injuries, loss and damage to its business and goodwill in an amount to be proven at trial.

94.     If Defendants are permitted to continue its conduct, HPT will be irreparably harmed.  HPT has been and continues to be damaged in an amount to be proven at trial and also in a manner and amount that cannot be fully measured or compensated in economic terms.  Such irreparable damage will continue unless Defendants' conduct is enjoined during the pendency of this action and thereafter.

## COUNT II

## VIOLATION OF THE DEFEND THE TRADE SECRETS ACT, 18 U.S.C. § 1836

## WASHINGTON UNIFORM TRADE SECRET ACT, RCW 19.108

95.     HPT repeats and realleges ¶¶ 1 through 81 of the Complaint as if fully set forth herein.

96.     HPT owned and possessed confidential and proprietary documents and data containing trade secrets, including but not limited to source code.

97.     Without authorization by HPT, upon information and belief, a third party (who was a former employee of HPT) provided Defendants with copies of and access to confidential and proprietary information of HPT, including its confidential and proprietary source code.

98.     The confidential and proprietary source code wrongfully obtained and possessed by Defendants gives Defendants, and those active in concert with them, the ability to modify HPT's confidential and proprietary source code to allow users to bypass all licensing checks and prompts, thus enabling HPT's users to use the software on any vehicle they wish without paying any licensing fees to HPT.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND DAMAGES - page 16

Heurlin, Potter, Jahn, Leatham, Holtmann & Stoker, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

99.     HPT's confidential and proprietary source code has never been accessible to the public.

100.    HPT has taken various reasonable measures to ensure that its source code remains confidential and proprietary, and to prevent misappropriation of its confidential and proprietary trade secrets, including its source code.

101.    HPT's trade secrets derive independent economic value, both actual and potential, from not being generally known to other persons, businesses, or the public, who could obtain economic value from their disclosure or use.

102.    In violation of law, Defendants have misappropriated HPT's trade secrets by modifying HPT's confidential and proprietary software to bypass all licensing checks and prompts to obtain "free" tuning credits from HPT.

103.    Defendants, acting in concert with others, have wrongfully accessed, trespassed, engineered and/or hacked HPT's software, systems and source code to remove licensing restrictions from HPT's VCM Suite Software to distribute it for their own profit as well as to cause harm to HPT, which Defendants view as a competitor.

104.    Moreover, Defendants, acting in concert with others, accomplished this via various means including adding extra licenses to existing interfaces and reselling them, by logging in via remote desktop to customer machines to enter in a hacked license key and by selling a version of hacked software with licensing defeated.

105.    Furthermore, Defendants have misappropriated HPT's parameter lists without HPT's authorization and by having incorporated them into Defendants' own software.

106.    Likewise, Defendants have misappropriated HPT's confidential and proprietary information by attempting to sell a cloned HPT interface with hacked credits on the internet.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND DAMAGES - page 17

107.   Such use of HPT's confidential and proprietary trade secret information constitutes misappropriation under the DTSA.

108.   As a direct and proximate result of Defendants' ongoing violations and the misconduct alleged herein, HPT has suffered, and will continue to suffer substantial injuries, loss and damage to its business and goodwill in an amount to be proven at trial.

109.   If Defendants are permitted to continue its conduct, HPT will be irreparably harmed. HPT has been and continues to be damaged in an amount to be proven at trial and also in a manner and amount that cannot be fully measured or compensated in economic terms. Such irreparable damage will continue unless Defendants' conduct is enjoined during the pendency of this action and thereafter.

## COUNT III

## VIOLATION OF THE WASHINGTON UNIFORM TRADE SECRET ACT, RCW 19.108

110.   HPT repeats and realleges ¶¶ 1 through 81 of the Complaint as if fully set forth herein.

111.   HPT owned and possessed confidential and proprietary documents and data containing trade secrets, including but not limited to source code.

112.   Without authorization by HPT, upon information and belief, a third party (who was a former employee of HPT) provided Defendants with copies of and access to confidential and proprietary information of HPT, including its confidential and proprietary source code.

113.   The confidential and proprietary source code wrongfully obtained and possessed by Defendants gives Defendants, and those active in concert with them, the ability to modify HPT's confidential and proprietary source code to allow users to bypass all licensing checks and

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND DAMAGES - page 18

Heurlin, Potter, Jahn, Leatham, Holtmann & Stoker, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

prompts, thus enabling HPT's users to use the software on any vehicle they wish without paying any licensing fees to HPT.

114.   HPT's confidential and proprietary source code has never been accessible to the public and is valued at millions of dollars.

115.   HPT has taken various reasonable measures to ensure that its source code remains confidential and proprietary, and to prevent misappropriation of its confidential and proprietary trade secrets, including its source code.

116.   HPT's trade secrets derive independent economic value, both actual and potential, from not being generally known to other persons, businesses, or the public, who could obtain economic value from their disclosure or use.

117.   In violation of law, Defendants have misappropriated HPT's trade secrets by modifying HPT's confidential and proprietary software to bypass all licensing checks and prompts to obtain "free" tuning credits from HPT.

118.   Defendants, acting in concert with others, have wrongfully accessed, trespassed, engineered and/or hacked HPT's software, systems and source code to remove licensing restrictions from HPT's VCM Suite Software to distribute it for their own profit as well as to cause harm to HPT, which Defendants view as a competitor.

119.   Moreover, Defendants, acting in concert with others, accomplished this via various means including adding extra licenses to existing interfaces and reselling them, by logging in via remote desktop to customer machines to enter in a hacked license key and by selling a version of hacked software with licensing defeated.

120.   Furthermore, Defendants have misappropriated HPT's parameter lists without HPT's authorization and by having incorporated them into Defendants' own software.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND DAMAGES - page 19

Heurlin, Potter, Jahn, Leatham, Holtmann & Stoker, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

121.   Likewise, Defendants have misappropriated HPT's confidential and proprietary information by attempting to sell a cloned HPT interface with hacked credits on the internet.

122.   Such use of HPT's confidential and proprietary trade secret information constitutes misappropriation under the Washington Uniform Trade Secrets Act, RCM 19.108.

123.   As a direct and proximate result of Defendants' ongoing violations and the misconduct alleged herein, HPT has suffered, and will continue to suffer substantial injuries, loss and damage to its business and goodwill in an amount to be proven at trial.

124.   If Defendants are permitted to continue their misconduct, HPT will be irreparably harmed.  HPT has been and continues to be damaged in an amount to be proven at trial and also in a manner and amount that cannot be fully measured or compensated in economic terms.  Such irreparable damage will continue unless Defendants' conduct is enjoined during the pendency of this action and thereafter.

## COUNT IV

## VIOLATION OF THE ILLINOIS TRADE SECRETS ACT, 765 ILCS 1065/1, ET. SEQ.

125.   HPT repeats and realleges ¶¶ 1 through 81 of the Complaint as if fully set forth herein.

126.   HPT owned and possessed confidential and proprietary documents and data containing trade secrets, including but not limited to source code.

127.   Without authorization by HPT, upon information and belief, a third party (who was a former employee of HPT) provided Defendants with copies of and access to confidential and proprietary information of HPT, including its confidential and proprietary source code.

128.   The confidential and proprietary source code wrongfully obtained and possessed by Defendants gives Defendants, and those active in concert with them, the ability to modify

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND DAMAGES - page 20

Heurlin, Potter, Jahn, Leatham, Holtmann & Stoker, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

HPT's confidential and proprietary source code to allow users to bypass all licensing checks and prompts, thus enabling HPT's users to use the software on any vehicle they wish without paying any licensing fees to HPT.

129.    HPT's confidential and proprietary source code has never been accessible to the public.

130.    HPT has taken various reasonable measures to ensure that its source code remains confidential and proprietary, and to prevent misappropriation of its confidential and proprietary trade secrets, including its source code.

131.    HPT's trade secrets derive independent economic value, both actual and potential, from not being generally known to other persons, businesses, or the public, who could obtain economic value from their disclosure or use.

132.    In violation of law, Defendants have misappropriated HPT's trade secrets by modifying HPT's confidential and proprietary software to bypass all licensing checks and prompts to obtain "free" tuning credits from HPT.

133.    Defendants, acting in concert with others, have wrongfully accessed, trespassed, engineered and/or hacked HPT's software, systems and source code to remove licensing restrictions from HPT's VCM Suite Software to distribute it for their own profit as well as to cause harm to HPT, which Defendants view as a competitor.

134.    Moreover, Defendants, acting in concert with others, accomplished this via various means including adding extra licenses to existing interfaces and reselling them, by logging in via remote desktop to customer machines to enter in a hacked license key and by selling a version of hacked software with licensing defeated.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND DAMAGES - page 21

Heurlin, Potter, Jahn, Leatham, Holtmann & Stoker, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

135.    Furthermore, Defendants have misappropriated HPT's parameter lists without HPT's authorization and by having incorporated them into Defendants' own software.

136.    Likewise, Defendants have misappropriated HPT's confidential and proprietary information by attempting to sell a cloned HPT interface with hacked credits on the internet.

137.    Such use of HPT's confidential and proprietary trade secret information constitutes misappropriation under the Illinois Trade Secrets Act.

138.    As a direct and proximate result of Defendants' ongoing violations and the misconduct alleged herein, HPT has suffered, and will continue to suffer substantial injuries, loss and damage to its business and goodwill in an amount to be proven at trial.

139.    If Defendants are permitted to continue its conduct, HPT will be irreparably harmed. HPT has been and continues to be damaged in an amount to be proven at trial and also in a manner and amount that cannot be fully measured or compensated in economic terms. Such irreparable damage will continue unless Defendants' conduct is enjoined during the pendency of this action and thereafter.

## COUNT V

## UNFAIR COMPETITION UNDER THE

## WASHINGTON CONSUMER PROTECTION ACT, RCW 19.86.020

140.    HPT repeats and realleges ¶¶ 1 through 81 of the Complaint as if fully set forth herein.

141.    Through the acts described hereinabove, Defendants have engaged in unfair practices in violation of the public interest by misappropriating the trade secrets of HPT.

142.    Specifically, Defendants' deceives the public by passing off HPT credits and license keys as authentic products and offerings of HPT when, in fact, they are not.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND DAMAGES - page 22

Heurlin, Potter, Jahn, Leatham, Holtmann & Stoker, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

143.    Defendants' misconduct, as described hereinabove, affects the public interest.

144.    HPT's interests have been injured in numerous ways as a result of Defendants' unfair and deceptive acts and practices.

145.    But for Defendants' unfair and deceptive practices, HPT would not have suffered these injuries.

**COUNT VI**

**UNFAIR COMPETITION UNDER THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1 ET. SEQ.**

146.    HPT repeats and realleges ¶¶ 1 through 81 of the Complaint as if fully set forth herein.

147.    Through the acts described hereinabove, Defendants have engaged in unfair practices in violation of the public interest by misappropriating the trade secrets of HPT.

148.    Specifically, Defendants' deceives the public by passing off HPT credits and license keys as authentic products and offerings of HPT when, in fact, they are not.

149.    Defendants' misconduct, as described hereinabove, affects the public interest.

150.    HPT's interests have been injured in numerous ways as a result of Defendants' unfair and deceptive acts and practices.

151.    But for Defendants' unfair and deceptive practices, HPT would not have suffered these injuries.

**COUNT VII**

**BREACH OF CONTRACT**

152.    HPT repeats and realleges ¶¶ 1 through 81 of the Complaint as if fully set forth herein.

Heurlin, Potter, Jahn, Leatham, Holtmann & Stoker, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

153.   On or about September 28, 2015, in connection with Defendants' use of HPT's software, Defendants entered into the EULA with HPT.

154.   The EULA is a valid and enforceable contract.

155.   HPT fully performed its obligations under the EULA.

156.   The EULA provided, in pertinent part:

> You may not create a derivative work, reverse engineer, decompile, or
> disassemble the SOFTWARE PRODUCT, except and only to the extent
> that such activity is expressly permitted by applicable law notwithstanding
> this limitation

(See Exhibit A).

157.   By virtue of Defendants' misconduct as set forth hereinabove, Defendants have breached their obligations under the EULA.

158.   Defendants' misconduct constitutes a material breach of the EULA.

159.   As a direct and proximate result of Defendants' ongoing violations and the misconduct alleged herein, HPT has suffered, and will continue to suffer substantial injuries, loss and damages in an amount to be proven at trial.

## COUNT VIII

### TORTIOUS INTEFERENCE WITH PROSPECTIVE

### CONTRACTUAL OR ECONOMIC RELATIONS

160.   HPT repeats and realleges ¶¶ 1 through 81 of the Complaint as if fully set forth herein.

161.   HPT has maintained valid business relationships with many vendors, resellers and customers.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND DAMAGES - page 24

Heurlin, Potter, Jahn, Leatham, Holtmann & Stoker, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

162.     HPT has a reasonable expectation that the relationships with its vendors, resellers and customers will continue and will not be disrupted by Defendants' conduct.

163.     Defendants' knew of HPT's relationships and expectations, but intentionally, wrongfully and unjustifiably interfered with those relationships.

164.     Specifically, Defendants have solicited vendors, customers and suppliers of HPT to purchase hacked license keys and versions of software with licensing defeated from Defendants, have sold hacked license keys and versions of software with licensing defeated to third parties, and have interfered with HPT's relationships with its vendors, resellers and customers.

165.     As a result of Defendants' actions, HPT has suffered irreparable harm for which it has no adequate remedy at law.  Unless enjoined, Defendants' will continue to harm HPT's business, causing further irreparable harm to HPT.

166.     As a direct and proximate result of Defendants' ongoing violations and the misconduct alleged herein, HPT has suffered, and will continue to suffer substantial injuries, loss and damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, HPT respectfully prays for judgment against Defendants, **KEVIN SYKES-BONNET, JOHN MARTINSON** and **SYKED ECU TUNING INCORPORATED**, and in favor of HP Tuners, LLC as follows:

1.     Awarding and ordering an accounting and disgorgement of all Defendants' profits and/or damages suffered by Plaintiff due to Defendants' misappropriation of the HPT's confidential and proprietary trade secrets pursuant to:

a.  the Computer Fraud and Abuse Act, 18 U.S.C. §1030;

Heurlin, Potter, Jahn, Leatham, Holtmann & Stoker, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA 98666-0611
(360) 750-7547

b.  the Defend Trade Secrets Act, 18 U.S.C. §1836 et seq.;

c.  the Washington Uniform Trade Secrets Act, RCW 19.108; and

d.  the Illinois Trade Secrets Act, 765 ILCS 1065/1 et. seq.

2.      Awarding Plaintiff exemplary damages as authorized by statute for Defendants' willful misappropriation.

3.      Enjoining Defendants from using misappropriated trade secrets pursuant to statute.

4.      Entry of a declaratory judgment that Defendants' conduct was a violation of the Computer Fraud and Abuse Act, 18 U.S.C. 1030 (a)(4).

5.      Enjoining Defendants from accessing HPT's Protected Computers.

6.      Awarding such other and further relief as may be just and proper caused by Defendants' violation of the Computer Fraud and Abuse Act, 18 U.S.C. 1030 (a)(4).

7.      Awarding HPT compensatory damages, in an amount to be proven at trial.

8.      Awarding pre- and post-judgment interest to HPT.

9.      Awarding HPT a preliminary and permanent injunction enjoining Defendants, their agents, servants and employees, and those people in active concert or participation with them from:

a.  Passing off any of their products or services as those of HPT;

b.  Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of Defendants' businesses, products or services;

c.  Causing a likelihood of confusion or misunderstanding as to their affiliation, connection or association with HPT or any of HPT products or services; and

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND DAMAGES - page 26

Heurlin, Potter, Jahn, Leatham, Holtmann & Stoker, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

d.  Unfairly competing with HPT in any manner.

10.    An award of damages in an amount to be proven at trial based on Defendants' unfair competition.

11.    An award of damages in an amount to be proven at trial based on Defendants' breach of contract.

12.    An award of damages in an amount to be proven at trial based on Defendants' tortious interference with HPT's prospective contractual or economic relations.

13.    An order that Defendants be required to file with the Court and to serve upon HPT counsel within ten (10) days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which they have complied with such injunction or order.

14.    An award of the costs and expenses, including reasonable attorney's fees, incurred by HPT in connection with this action as provided for by statute.

15.    An award of such other and further relief as the Court deems just and proper.

Dated this 8th day of May, 2018.

HEURLIN, POTTER, JAHN, LEATHAM,
HOLTMANN & STOKER, P.S.

_s/ Stephen G. Leatham_
Stephen G. Leatham, WSBA #15572
211 E. McLoughlin Boulevard, Suite 100
Vancouver, WA 98663
Telephone: (360) 750-7547
Fax: (360) 750-7548
E-mail: sgl@hpl-law.com

Andrew P. Bleiman
(admitted _pro hac vice_)
Marks & Klein
1363 Shermer Road, Suite 318
Northbrook, Illinois 60062

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND DAMAGES - page 27

(312) 206-5162

E-mail: andrew@marksklein.com

Attorneys for HP Tuners, LLC

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND DAMAGES - page 28

Heurlin, Potter, Jahn, Leatham, Holtmann & Stoker, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA 98666-0611
(360) 750-7547

1

## CERTIFICATE OF SERVICE

2

    I hereby certify that on May 8, 2018, I caused the foregoing to be electronically filed with

3

the Clerk of the Court using the CM/ECF system which will send notification of such filing to all

4

Counsel of Record.

5

                                      HEURLIN, POTTER, JAHN, LEATHAM,
                                      HOLTMANN & STOKER, P.S.

6

7

                                     *s/ Stephen G. Leatham*

8

                                     Stephen G. Leatham, WSBA #15572
                                     211 E. McLoughlin Boulevard, Suite 100

9

                                     Vancouver, WA 98663
                                     Telephone:  (360) 750-7547

10

                                     Fax:  (360) 750-7548
                                     E-mail:  sgl@hpl-law.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
AND DAMAGES - page 30

Heurlin, Potter, Jahn, Leatham, Holtmann & Stoker, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA 98666-0611
(360) 750-7547

# EXHIBIT B

**Subpoena to Testify at Deposition and Provide Documents Pursuant to Fed. R. Civ. P. 45 issued to Bobbie Cannata**

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

| | | |
|---|---|---|
| **HP TUNERS, LLC,** | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   3:17-cv-05760 BHS |
| **KEVIN SYKES-BONNETT, SYKED ECU TUNING INCORPORATED, and JOHN MARTINSON,** | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:            BOBBIE CANNATA, 16455 Bonnie Lane, Reno, Nevada 89511

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Sunshine Litigation Services and Technologies 151 Country Estates Cir. Reno, NV 89511 (775-323-3411) | Date and Time: **10/16/2018**    10:00 am |
|---|---|

The deposition will be recorded by this method:    Stenographic and Video Means

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: (1) All documents and communications between you and Kevin Sykes-Bonnett; (2) All documents and communications between you and John Martinson; (3) All documents and communications which evidence, refer or relate to your ownership interest in Syked ECU Tuning, Inc.; and (4) All documents and communications which evidence, refer or relate to HP Tuners, LLC, its software and products.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   9/11/2018

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | *Andrew P. Bleiman* |
| Signature of Clerk or Deputy Clerk | | Andrew P. Bleiman |
| | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   HP Tuners, LLC
_____ , who issues or requests this subpoena, are:
Andrew P. Bleiman, Marks & Klein, LLP, 1363 Shermer Road, #318, Northbrook, IL 60062 andrew@marksklein.com
~~312-206-5162~~

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  3:17-cv-05760 BHS

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

 ❑ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

 ❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

         _____

             *Server's signature*

         _____

             *Printed name and title*

         _____

             *Server's address*

**Additional information regarding attempted service, etc.:**

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
      (i) is a party or a party's officer; or
      (ii) is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
   (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
   (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**

   (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      (i) fails to allow a reasonable time to comply;
      (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
      (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv) subjects a person to undue burden.
   (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      (i) disclosing a trade secret or other confidential research, development, or commercial information; or
      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B). the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
   (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
   (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i) expressly make the claim; and
      (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT C

**November 28, 2018 Order Denying Ken Cannata's Motion to Quash**

1

2

3

4　　　　　　　　　　UNITED STATES DISTRICT COURT
　　　　　　　　　　WESTERN DISTRICT OF WASHINGTON
5　　　　　　　　　　　　　　AT TACOMA

6　HP Tuners, LLC,
　　　　　　　　　　　　　　　　　　　Case No. 3:17-cv-05760-BHS
7　　　　　　　　　　　　Plaintiff,
　　　　　　　　　　　　　　　　　　　ORDER DENYING MOTION TO
8　　　　v.　　　　　　　　　　　　　　QUASH

9　Sykes-Bonnett, et al.,

　　　　　　　　　　　　Defendants.
10

11　　　　District Judge Benjamin H. Settle referred to the undersigned magistrate judge all

12　discovery matters in this intellectual property case between plaintiff HP Tuners, LLC, and

13　defendants Kevin Sykes-Bonnett, Syked ECU Tuning, Inc., and John Martinson. Plaintiff alleges

14　violations of the Computer Fraud and Abuse Act, misappropriation of trade secrets under state

15　and federal law, and several other causes of action. This order concerns a motion to quash by

16　non-party Ken Cannata, Dkt. 104. For the reasons discussed below and on the record in a

17　telephone conference on November 26, 2018, the Court will deny the motion.

18　　　　　　　　　　　　　　　　DISCUSSION

19　　　　Non-party Ken Cannata brought a motion to quash plaintiff's deposition subpoena of his

20　wife, Bobbie Cannata. Dkt. 104. He asserts that the Court should quash the subpoena because

21　Bobbie Cannata has no knowledge relevant to plaintiff's claims, because any relevant

22　information she possesses would be protected by spousal privilege, and because plaintiff issued

23　the subpoena only to harass her. *Id.*

24

25

ORDER DENYING MOTION TO QUASH - 1

1    Under Rule 26, parties may obtain discovery on any non-privileged matter that is relevant

2    to any party's claim or defense and proportional to the needs of the case. The factors involved in

3    proportionality are the importance of the issues at stake in the action, the amount in controversy,

4    the parties' relative access to relevant information, the parties' resources, the importance of the

5    discovery in resolving the issues, and whether the burden or expense of the proposed discovery

6    outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1).

7    A party—and in certain cases a non-party—may move to quash a subpoena. The Federal

8    Rule of Civil Procedure require the Court to "quash or modify a subpoena that: (i) fails to allow a

9    reasonable time to comply; (ii) requires a person to comply beyond the geographical limits

10   specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no

11   exception or waiver applies; or (iv) subjects a person to undue burden." The Court will also

12   quash or modify a subpoena that would require disclosure of information that falls outside

13   discovery permitted by Rule 26. *See Bastida v. Nat'l Holdings Corp.*, 2016 WL 6472648, at *1

14   (W.D. Wash. 2016) (unpublished) (citing *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d

15   774, 779–80 (9th Cir. 1994)).

16   "Ordinarily," however, "a person other than that against whom the subpoena was issued,

17   lacks standing to move to quash the subpoena." *Sterling Merch., Inc. v. Nestle, S.A.*, 470 F. Supp.

18   2d 77, 81 (D.P.R. 2006). Courts recognize an exception when the movant "claims a personal

19   right or privilege with respect to the discovery sought in the subpoena." *Emara v. Multicare*

20   *Health Sys.*, 3:11-CV-6055-RBL, 2012 WL 5205950, at *2 (W.D. Wash. Oct. 22, 2012). The

21   Ninth Circuit has not clarified whether a party ever has standing to quash a subpoena to a third

22   party. *Silcox v. AN/PF Acquisitions Corp.*, 2018 U.S. Dist. LEXIS 53536, at *4 (W.D. Wash.

23   2018) (unpublished) (citing I*n re Rhodes Cos., LLC*, 475 B.R. 733, 738-40 (D. Nev. 2012)).

24

25

ORDER DENYING MOTION TO QUASH - 2

1    In addition, the rule governing motions to quash, Rule 45(d)(3), states that the court with

2    power to quash a subpoena is "the court for the district where compliance is required." *See Wultz*

3    *v. Bank of China, Ltd*, 304 F.R.D. 38, 43 (D.D.C. 2014) ("[S]ince the text of Rule 45(a)(2) now

4    explicitly requires that '[a] subpoena must [be] issue[d] from the court where the action is

5    pending,' Fed. R. Civ. P. 45(a)(2), and because the underlying litigation is not pending in this

6    Court, this Court *could not* now have issued the subpoena at issue in accordance with Rule

7    45(a)(2)."). Where that court is not the court that issued the subpoena, Rule 45(f) permits the

8    court in the district where compliance is required to transfer a Rule 45 motion to the issuing

9    court, "if the person subject to the subpoena consents or if the court finds exceptional

10   circumstances." *See Wultz*, 304 F.R.D. at 47.

11    Here, this Court issued the subpoena to Bobbie Cannata. *See* Declaration of Andrew

12   Bleiman, Exhibit B, Dkt. 110-2, p. 1 (Bobbie Cannata subpoena). However, the district where

13   Ms. Cannata resides—and thus the district where compliance is required—is the District of

14   Nevada. *See id.*; Fed. R. Civ. P. 45(c)(1). Accordingly, the motion to quash should have been

15   brought in the District of Nevada. Fed. R. Civ. P. 45(d)(3).

16    As noted above, in most cases, only the person against whom a subpoena was issued has

17   standing to bring a motion to quash it. *Sterling Merch.*, 470 F. Supp. 2d at 81. The Court assumes

18   without deciding that Ken Cannata, a non-party, has standing to bring a motion to quash the

19   subpoena directed at Bobbie Cannata, another non-party, because he is asserting a privilege that

20   belongs to him and his spouse. Nonetheless, this motion is premature, it is submitted to the

21   wrong court, and Mr. Cannata fails to establish any grounds for the motion to quash.

22    Mr. Cannata asserts that the marital communications privilege protects any relevant

23   information Ms. Cannata possesses. The marital communications privilege "protects statements

24

25

ORDER DENYING MOTION TO QUASH - 3

1   or actions that are intended as confidential communications between spouses, made during the

2   existence of a valid marriage." *United States v. Fomichev*, 899 F.3d 766, 771 (9th Cir. 2018). It

3   makes presumptively confidential (1) "words or acts intended as communication to the other

4   spouse," (2) "communications made during a valid marriage," and (3) "marital communications

5   which are confidential." *Marashi*, 913 F.2d at 729-30. The Ninth Circuit has emphasized a

6   narrow construction of the privilege, observing that "it obstructs the truth-seeking process."

7   *United States v. Marashi*, 913 F.2d 724, 729 (9th Cir. 1990).

8           Plaintiff has plausibly alleged that Ms. Cannata, one of three owners of defendant Syked

9   ECU Tuning, Inc., is likely to possess relevant information about defendants' "business and

10  business practices," including information about "her day-to-day involvement in Syked ECU

11  Tuning, communications with and between her co-owners regarding the business and clients of

12  Syked ECU Tuning, her knowledge of the business of Syked ECU Tuning, the identities of other

13  individuals who may possess relevant information, and her knowledge of the company's

14  possession, use and misappropriation of HPT's proprietary information." Dkt. 109, p. 5.

15          In light of Ms. Cannata's ownership of the business, it is plausible that she has

16  knowledge of the relevant business information plaintiff seeks. Ken Cannata presents no

17  evidence to support his assertions that Ms. Cannata is an owner who is completely ignorant of

18  any relevant information whatsoever -- or that, alternatively, the only relevant information she

19  knows is limited to knowledge she obtained in privileged confidential marital communications.

20  *See* Dkt. 104, 109.

21          Mr. Cannata may not bring a motion to quash based solely on a hypothetical invocation

22  of joint marital communications privilege. *See, e.g., Briggs v. Am. Laser Centers of Vancouver,*

23  *LLC*, No. C07-5065 RBL, 2007 WL 2116397, at *3 (W.D. Wash. July 19, 2007) (unpublished)

24

25

ORDER DENYING MOTION TO QUASH - 4

1   (denying motion that argued subpoena should be quashed based on attorney-client privilege,

2   noting that moving party must "support the claimed privilege with a privilege log, i.e., 'a

3   description of the nature of the documents, communications or things not produced.'" [quoting

4   Fed. R. Civ. P. 45(d)(2)(A)]). Ms. Cannata may assert the marital communications privilege

5   during her deposition if the plaintiff asks a question during the deposition about which Ms.

6   Cannata's response would necessarily involve privileged information. Ms. Cannata may also

7   assert the privilege by submitting a privilege log that identifies specific privileged information

8   and explains the particular redactions or withheld information, in response to the plaintiff's

9   subpoena requesting documents, data, and other items relevant to the claims and defenses in the

10   litigation.

11          Then "the court ultimately decides whether, if this claim is challenged, the privilege or

12   protection applies." *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 162 F.R.D. 490, 492

13   (E.D. Pa. 1995). If Ms. Cannata does assert the privilege, the reviewing court (either court where

14   compliance is required, i.e., the U.S. District Court for the District of Nevada – or if a transfer

15   request is made and granted, the issuing court, i.e., this Court) will then be able resolve any

16   contested privilege issue when it becomes ripe for consideration.

17          Accordingly, the motion to quash, Dkt. 104, is DENIED.

18          DATED this 28th day of November, 2018.

19

20

21          Theresa L. Fricke
            United States Magistrate Judge
22

23

24

25

ORDER DENYING MOTION TO QUASH - 5

# EXHIBIT D

## Declaration of Attempts

**STEPHEN G LEATHAM, ESQ**
211 E McLoughlin Blvd Ste 100   Vancouver, WA 986633368
CASE NUMBER: 3:17-cv-05760 BHS



GPS: 39.3557472222222;-119.826416666667

**Process Serving & Legal Courier**
**RENO/CARSON/LAS VEGAS**
Serving all of Nevada Since 1981

**SUMMARY OF SERVICE**
**JOB COMPLETE**
**R45472**
**.PROCESS SERVICE**

**COMPLETED BY**
**JENLEE KNIGHT PARKER**
**9/10/2018 2:19 PM**

**SUMMARY OF SERVICE**

Reference No.:
3:17-cv-05760 BHS

**\* \* NOT SERVED \* \***

I received the within process on  August 27, 2018 and that after due and diligent effort I have been unable to serve said person.  The following itemization of the dates and times of attempts details the efforts required to effect service.

   Servee: BOBBIE CANNATA

      Attempted at 16455 Bonnie Ln Reno, NV 895119063 On 8/27/2018 at 7:12 PM
      Results: ATTEMPT : Subject not home . Card left with husband .

      Attempted at 16455 Bonnie Ln Reno, NV 895119063 On 8/28/2018 at 4:42 PM
      Results: ATTEMPT  LEFT CARD:  No answer at door.  Server left doorhanger with contact information.

      Attempted at 16455 Bonnie Ln Reno, NV 895119063 On 8/29/2018 at 7:47 PM
      Results: ATTEMPT card gone:  No answer at door, card gone from previous attempt. Trailblazer SUV on driveway and backed up to garage NV # LT39648.

      Attempted at 16455 Bonnie Ln Reno, NV 895119063 On 8/30/2018 at 5:53 PM
      Results: ATTEMPT :  No answer at door. Television and adult human voices and adult human forms heard and seen from balcony over garage. Trailblazer now facing garage doors (same plate # as on previous attempt ).

      Attempted at 16455 Bonnie Ln Reno, NV 895119063 On 8/31/2018 at 4:00 PM
      Results: No answer at door

      Attempted at 16455 Bonnie Ln Reno, NV 895119063 On 9/1/2018 at 8:52 AM
      Results: ATTEMPT REFUSING TO ANSWER:  No answer at door, server noted subjects inside refusing to answer. Children s voices and running footsteps heard immediately after first (of two) times ringing of doorbell.

      Attempted at 16455 Bonnie Ln Reno, NV 895119063 On 9/2/2018 at 6:10 PM
      Results: ATTEMPT :  No answer at door. No noise or movement detected from inside house .

      Attempted at 16455 Bonnie Ln Reno, NV 895119063 On 9/6/2018 at 6:58 PM
      Results: ATTEMPT : Beginning second leg of stakeout .

      Attempted at 16455 Bonnie Ln Reno, NV 895119063 On 9/6/2018 at 7:26 PM
      Results: ATTEMPT : Continuing stakeout

      Attempted at 16455 Bonnie Ln Reno, NV 895119063 On 9/6/2018 at 7:41 PM
      Results: ATTEMPT : Continuing stakeout . Only light on in home is seemingly automatic light on garage door above garage door .

      Attempted at 16455 Bonnie Ln Reno, NV 895119063 On 9/6/2018 at 8:01 PM
      Results: ATTEMPT : Continuing stakeout . No visible activity in house from street. No noise or movement detected from house.

      Attempted at 16455 Bonnie Ln Reno, NV 895119063 On 9/6/2018 at 8:21 PM
      Results: ATTEMPT : Continuing stakeout . Nothing to report as yet.

      Attempted at 16455 Bonnie Ln Reno, NV 895119063 On 9/6/2018 at 8:41 PM

**OFFICIAL AFFIDAVIT OF SERVICE/NON-SERVICE WILL FOLLOW IN THE MAIL**

**NOT A PROOF OF SERVICE | SUMMARY OF SERVICE | NOT A PROOF OF SERVICE**

Did you know you can check status, place orders, and look up costs online?

**www.renocarson.com**

**SUMMARY OF SERVICE**

**3:17-cv-05760 BHS**

Summary/R45472

**STEPHEN G LEATHAM, ESQ**
**211 E McLoughlin Blvd Ste 100   Vancouver, WA 986633368**
CASE NUMBER: **3:17-cv-05760 BHS**



GPS: **39.3558753888889;-119.826863694444**

**RENO/CARSON/LAS VEGAS**
Serving all of Nevada Since 1981

**SUMMARY OF SERVICE**
**JOB COMPLETE**
**R46606**
**.PROCESS SERVICE**

**COMPLETED BY**
**SANDRA McCOLLUM**
**9/10/2018  2:14 PM**

| **SUMMARY OF SERVICE** | Reference No.: **3:17-cv-05760 BHS** |

## * * NOT SERVED * *

I received the within process on  September 06, 2018 and that after due and diligent effort I have been unable to serve said person.  The following itemization of the dates and times of attempts details the efforts required to effect service.

Servee: BOBBIE CANNATA

**Attempted at 16455 Bonnie Ln Reno, NV 895119063 On 9/6/2018 at 5:05 PM**
Results: ATTEMPT : Stake out beginning

**Attempted at 16455 Bonnie Ln Reno, NV 895119063 On 9/6/2018 at 6:56 PM**
Results: ATTEMPT : Stake out ending Parker arrived no activity.

**Attempted at 16455 Bonnie Ln Reno, NV 895119063 On 9/7/2018 at 5:51 AM**
Results: ATTEMPT : Stake out beginning

**Attempted at 16455 Bonnie Ln Reno, NV 895119063 On 9/7/2018 at 8:13 AM**
Results: ATTEMPT : Subject came out of garage in a Cadillac almost ran over server and sped down the road server believes from picture that this was subject.

**Attempted at 16455 Bonnie Ln Reno, NV 895119063 On 9/7/2018 at 8:29 AM**
Results: ATTEMPT : Subject came barreling out of garage at a high rate of speed server tried to approach and was almost run down as she fled at a high rate of speed. Server called client who wanted server to chase her down . Server stated she could not be involved in a high speed chase asked client if he wanted Parker to stay until 11 00 in case she returns he said yes. Server told client she would have office call for further instruction.

**Attempted at 16455 Bonnie Ln Reno, NV 895119063 On 8/27/2018 at 7:12 PM**
Results: ATTEMPT : Subject not home . Card left with husband .

**Attempted at 16455 Bonnie Ln Reno, NV 895119063 On 8/28/2018 at 4:42 PM**
Results: ATTEMPT  LEFT CARD:  No answer at door.  Server left doorhanger with contact information.

**Attempted at 16455 Bonnie Ln Reno, NV 895119063 On 8/29/2018 at 4:37 PM**
Results: ATTEMPT card gone:  No answer at door, card gone from previous attempt. Trailblazer SUV on driveway and backdoor patio ajar on previous attempt.

**OFFICIAL AFFIDAVIT OF SERVICE/NON-SERVICE WILL FOLLOW IN THE MAIL**

**NOT A PROOF OF SERVICE ( SUMMARY OF SERVICE ) NOT A PROOF OF SERVICE**
Results: ATTEMPT :  No answer at door Television and adult human voices and adult human forms heard and seen from balcony over garage. Trailblazer suv on drive garage doors open as on previous attempt ).

Visit our secure website at www.renocarson.com

**Attempted at 16455 Bonnie Ln Reno, NV 895119063 On 8/31/2018 at 4:06 PM**
Results: No answer at door

## SUMMARY OF SERVICE
## 3:17-cv-05760 BHS

**Attempted at 16455 Bonnie Ln Reno, NV 895119063 On 9/1/2019 at 8:52 AM**
Results: ATTEMPT REFUSING TO ANSWER:  No answer at door, server noted subjects inside refusing to answer. Children s voices and running footsteps heard immediately after first (of two) times ringing of doorbell.

Summary/R46606

**Attempted at 16455 Bonnie Ln Reno, NV 895119063 On 9/2/2018 at 6:10 PM**
Results: ATTEMPT :  No answer at door. No noise or movement detected from inside house .